UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BRANDON B.,

                      Plaintiff,

     v.

COMMISSIONER OF SOCIAL
SECURITY,

                      Defendant

**DECISION AND ORDER**

1:22-CV-00184 CDH

---

## INTRODUCTION

Plaintiff Brandon B. ("Plaintiff") seeks review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act (the "Act") (Dkt. 1). Under Rules 5 through 8 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) and Local Rule of Civil Procedure 5.5(d), the matter has been presented for decision by the parties' filing of motions for judgment on the pleadings. (*See* Dkt. 5; Dkt. 6; Dkt. 7). For the reasons that follow, the Court grants Plaintiff's motion to the extent that the matter is remanded for further administrative proceedings and denies the Commissioner's motion.

## BACKGROUND

On November 7, 2019, Plaintiff protectively filed an application for DIB. (Dkt.

4 at 48, 126, 138).[1] His application was initially denied on January 8, 2020, and upon reconsideration on March 17, 2020. (*Id*. at 48, 144-55, 172-81). Plaintiff requested a hearing before an administrative law judge ("ALJ") (*id*. at 48, 157-62), which was held on May 7, 2020 (*id*. at 38-54). On February 24, 2021, the ALJ issued an unfavorable decision. (*Id*. at 45-56). Plaintiff sought review from the Appeals Council, which denied his request on January 12, 2022. (*Id*. at 5-10). This action followed. (Dkt. 1).

## LEGAL STANDARD

### I.  Administrative Determination of Disability

The Social Security Administration's ("SSA") regulations establish a five-step, sequential evaluation that an ALJ follows in determining whether a claimant is disabled within the meaning of the Act. *See Sczepanski v. Saul*, 946 F.3d 152, 156 (2d Cir. 2020); 20 C.F.R. § 404.1520(a). At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not, the ALJ continues to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. *Id*. § 404.1520(a)(4)(ii). An impairment is "severe" within the meaning of the Act if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. § 404.1520(c).

If the claimant has at least one severe impairment, the ALJ proceeds to step three. There, the ALJ determines whether the claimant's impairment or impairments

---

[1]  In referencing the administrative transcript, the Court has referred to the page numbers generated by CM/ECF and found in the upper right corner of the documents.

meet or medically equal the criteria of the impairments listed in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(a)(4)(iii). If the claimant does not have an impairment that both meets or medically equals a Listing and satisfies the Act's durational requirement, *see id.* § 404.1509, the ALJ must determine the claimant's residual functional capacity ("RFC"), *id.* § 404.1520(e). "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by his impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *see* 20 C.F.R. § 404.1545.

At step four, the ALJ determines whether, in light of the RFC assessment, the claimant is capable of performing any past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is unable to perform any past relevant work, the ALJ proceeds to the fifth and last step. At this step, the burden shifts to the Commissioner to demonstrate that, taking into account the claimant's age, education, work experience, and RFC, the claimant is capable of performing substantial gainful work that exists in the national economy. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see* 20 C.F.R. § 404.1520(a)(4)(v).

## II.  Review by the Court

The Court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying an application for DIB. It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted). Instead, in performing its

review, the Court is "limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian*, 708 F.3d at 417 (citation omitted). If the Commissioner's findings of fact are supported by substantial evidence, they are "conclusive." 42 U.S.C. § 405(g). In other words, "[i]f there is substantial evidence to support the determination, it must be upheld." *Selian*, 708 F.3d at 417.

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

## DISCUSSION

### I. The ALJ's Decision

The ALJ applied the five-step, sequential evaluation described above in determining whether Plaintiff was disabled. Before proceeding to step one, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2024. (Dkt. 4 at 50).

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since June 5, 2019, the alleged onset date. (*Id.*). The ALJ found at step two that Plaintiff had the following severe impairments: "an anxiety disorder, major depressive disorder, bipolar disorder, and Asperger's Syndrome." (*Id.*).

The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the Listings. (*Id.* at 50). At step three, the ALJ specifically discussed the criteria of Listings 12.04 and 12.06. (*Id.* at 51-52).

The ALJ assessed Plaintiff's RFC and determined that Plaintiff retained the ability to perform a full range of work at all exertional levels, with the additional limitations that Plaintiff "can perform a simple task job with no fast paced quotas and at most, occasional contact with supervisors, coworkers, and the public." (*Id.* at 52). The ALJ then proceeded to step four and found that Plaintiff was unable to perform any past relevant work. (*Id.* at 55).

The ALJ found at step five that—considering Plaintiff's age, education, work experience, and RFC—there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 55-56). The ALJ ultimately concluded that Plaintiff was not disabled, as defined in the Act, from June 5, 2019, through the date of the ALJ's decision. (*Id.* at 48, 56).

## II.   Remand for Further Administrative Proceedings is Required

Plaintiff argues that the ALJ: (1) failed to discuss or incorporate the most restrictive limitations contained in the joint opinion of Mental Health Counselor ("MHC") Staphanie Fisk and Nurse Practitioner ("NP") Peter Coggiola, despite finding this opinion persuasive; and (2) failed to properly evaluate the medical opinions of record pursuant to the required regulatory factors. (*See* Dkt. 5-1 at 1, 8). For the reasons that follow, the Court finds that the ALJ failed to follow the

applicable regulations in assessing the medical opinions of record and that this error requires remand. Having thus concluded, the Court need not and does not reach the other argument raised by Plaintiff.

### A. Standard for Assessment of Medical Opinions

In adjudicating a disability application, an ALJ must consider and weigh the evidence of record, including medical opinions. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also* 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). The Commissioner's regulations set forth the following factors that the ALJ considers when assessing the persuasiveness of a medical opinion: (1) supportability, meaning that, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be"; (2) consistency, meaning that, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be"; (3) relationship with the claimant, including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and whether the relationship included a physical examination; (4) specialization, meaning that the opinion of a specialist "may be more persuasive about medical issues related to his or her area of specialty" than the opinion of a non-specialist; and (5) "other factors that tend to

support or contradict a medical opinion," which includes but is not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the most important factors and must be discussed in the ALJ's decision. 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required to, explain how he or she considered the other factors. *Id.*

### B.   The ALJ's Failure to Comply with the Regulations

MHC Fisk and NP Coggiola completed a Mental Residual Capacity Questionnaire on December 18, 2020. (Dkt. 4 at 821-25). In the questionnaire, they opined that Plaintiff had an "unlimited or very good" ability to remember work-like procedures, understand and remember short and simple instructions, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, ask simple questions and request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and be aware of normal hazards and take appropriate precautions. (*Id.* at 823). In all the other identified mental abilities and aptitudes needed to do unskilled work, MHC Fisk and NP Coggiola opined that Plaintiff was "limited but satisfactory." (*Id.*).

MHC Fisk and NP Coggiola further opined that Plaintiff's impairments would

cause him to be absent from work "[a]bout one day per month." (*Id.* at 825). The ALJ provided a summary of MHC Fisk and NP Coggiola's opinion in his decision (Dkt. 4 at 53), stating that he found it "fairly persuasive" given their treating relationship with Plaintiff (*id.* at 54).

On March 25, 2020, Dr. Sydney Domanowski wrote a letter stating that Plaintiff was "fully disabled" due to his mental health conditions and was unable to work in any capacity. (*Id.* at 690). On June 16, 2020, Dr. Domanowski completed a physician questionnaire wherein she opined that Plaintiff had difficulty with social situations and mood swings that could prohibit him from working in his fullest capacity, and that his condition had become stable over recent months with the help of medication and therapy. (*Id.* at 800). In his written determination, the ALJ summarized Dr. Domanowski's June 16, 2020 opinion and found it persuasive and consistent with Plaintiff's treatment records. (*Id.* at 54).

Turning first to the ALJ's evaluation of MHC Fisk and NP Coggiola's opinion, Plaintiff argues that the ALJ failed to properly articulate the supportability factor. (Dkt. 5-1 at 17). "To analyze supportability, the ALJ must conduct an inquiry confined to the medical source's own records that focuses on how well a medical source supported and explained their opinion." *Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 30 (S.D.N.Y. 2022) (internal quotation omitted). "The more relevant the evidence and explanations are, the more persuasive the medical opinion is." *Id.* (citing 20 C.F.R. § 404.1520c(c)(1)). "[T]o analyze consistency, the ALJ must conduct an all-encompassing inquiry focused on how well a medical source is supported, or not

supported, by the entire record." *Ayala*, 620 F. Supp. at 6 (internal quotation omitted). Consistency with other sources renders a medical opinion more persuasive. 20 C.F.R. § 404.1520c(c)(2).

Here, although the ALJ summarized MHC Fisk and NP Coggiola's opinion, the Court finds that he failed to adequately articulate the supportability factor in his evaluation of the opinion's persuasiveness. When discussing the opinion, the ALJ merely reported that MHC Fisk and NP Coggiola's treating records "show[ed] mostly mild limitations," with no further discussion. (Dkt. 4 at 54). He then stated that "[g]iven their treating relationship with the claimant, [he] f[ound] their opinion to be fairly persuasive and [his] [RFC] findings and [sic] their opinions into account." (*Id.*). In other words, the ALJ failed to discuss how MHC Fisk and NP Coggiola supported their opinion, except to make a general declaration. (*See id.*). This offends the "[t]he . . . regulations[,] [which] require an ALJ to specifically explain how well a medical source supports their own opinion(s) and how consistent a medical source/opinion is with the medical evidence as a whole." *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022) (internal quotation omitted); *see also Kaliegh O. o/b/o S.S.T. v. Comm'r of Soc. Sec.*, No. 5:24-CV-0662 (MAD/TWD), 2025 WL 2933177, at *5 (N.D.N.Y. Aug. 11, 2025) ("It is well-established that an ALJ may not generally assert that an opinion is consistent with or supported by the record, without further elaboration." (internal quotations omitted)), *adopted,* No. 5:24-CV-00662 (MAD/TWD), 2025 WL 2528577 (N.D.N.Y. Sept. 3, 2025); *Loni S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *15 (N.D.N.Y. June 27, 2023)

("District courts in the Second Circuit have reiterated . . . that an ALJ errs where he or she summarily concludes that an opinion is unsupported by treatment notes or inconsistent with the record.").

In its opposition, Defendant does not meaningfully explain how the ALJ evaluated the supportability factor. Defendant asserts that the ALJ "based his finding" on "treatment records showing mostly mild limitations" and cites generally to treating records from MHC Fisk and NP Coggiola. This cursory explanation provides no basis for the Court to assess whether the ALJ's determinations were supported by substantial evidence. Defendant also states that "[t]he ALJ based his findings on the treating relationship between the providers and Plaintiff[.]" (Dkt. 6-1 at 9). However, Plaintiff's treating relationship with MHC Fisk and NP Coggiola is pertinent to a separate evaluation factor that the ALJ need not explain in his consideration of their opinion. *See* 20 C.F.R. § 404.1520c(c). Defendant does not explain how referencing the treating relationship is adequate to address the supportability factor. The ALJ plainly did not comply with the regulations in assessing MHC Fisk and NP Coggiola's joint opinion.[2]

---

[2] Defendant also argues that the ALJ's RFC finding is fully consistent with MHC Fisk and NP Coggiola's opinion, essentially contending that Plaintiff was not harmed by any error in the ALJ's application of the regulatory factors. (*See* Dkt. 6-1 at 9-10). But the question of whether an ALJ committed an error is distinct from the question of whether that error was harmful. And, for the reasons discussed below, the Court finds that the ALJ's error in assessing Dr. Domanowski's opinion was not harmless. As such, even if the error was harmless with respect to MHC Fisk and NP Coggiola's opinion, that would not obviate the need for remand.

Turning next to Dr. Domanowski's findings, the Court agrees with Plaintiff that the ALJ did not properly consider the supportability factor regarding the June 16, 2020 opinion. (*See* Dkt. 5-1 at 14-16).[3] In discussing that opinion, the ALJ merely declared it "persuasive and consistent with the treating records" without further elaboration. (Dkt. 4 at 54).

In opposition, Defendant argues that the ALJ found the June 16, 2020 opinion "persuasive because it [wa]s consistent with the treating records . . . [and that] [t]o the extent the ALJ did not more fully discuss supportability, any error is harmless because the ALJ discussed the treating records reflecting unremarkable mental status examination findings throughout his decision." (Dkt. 6-1 at 14). The Court is not persuaded by this argument. As discussed above, a generalized assertion that an opinion is consistent with the medical source's treatment records is insufficient to comport with the regulations. And as to the potential harmfulness of the error, Dr. Domanowski opined that Plaintiff experienced "[s]wings in mood which could prohibit work to his fullest capacity at times." (Dkt. 4 at 800). The ALJ provided no explanation of how he interpreted this portion of Dr. Domanowski's opinion, whether it was supported by Dr. Domanowski's treatment records, or how the ALJ did or did

---

[3] Defendant argues that Dr. Domanowski's March 25, 2020 letter does not qualify as a medical opinion under the applicable regulations. (Dkt. 6-1 at 11). The Court agrees. The regulations provide that "[s]tatements that [claimants] are or are not disabled, blind, able to work, or able to perform regular or continuing work" are "inherently neither valuable nor persuasive" and are not required to be analyzed in making disability determination. 20 C.F.R. § 404.1520b(c)(3). The Court accordingly finds no reversible error in the ALJ's consideration of Dr. Domanowski's March 25, 2020 letter.

not incorporate it into his RFC finding.

Under these circumstances, "the Court is left to guess at the ALJ's reasoning, which frustrates meaningful review." *Nicole L. v. Kijakazi*, No. 6:20-CV-01576 (NAM), 2022 WL 160274, at *8 (N.D.N.Y. Jan. 18, 2022). Further, it is not clear to the Court that interpreting Dr. Domanowski's June 16, 2020 as consistent with marked mental limitations—which Defendant effectively concedes is a possible reading (*see* Dkt. 6-1 at 15 n.1)—would have had no meaningful effect on the resolution of this case. The Court therefore cannot say with certainty that application of the proper legal standard would have inevitably led to the same outcome. *Cf. Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (explaining that "[r]emand is unnecessary . . . where application of the correct legal standard could lead to only one conclusion") (quotation and original alteration excluded).

For these reasons, the Court concludes that remand is in order "to allow the ALJ to explain the supportability and consistency factors with regard to the medi[c]al opinion evidence, and to further develop the record[.]" *Kaliegh O. o/b/o S.S.T.*, 2025 WL 2933177, at *5. Having reached this conclusion, the Court need not and does not reach Plaintiff's argument that the ALJ failed to adequately explain his rejection of particular limitations contained in MHC Fisk and NP Coggiola's opinion.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 5) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion for judgment on the

not incorporate it into his RFC finding.

Under these circumstances, "the Court is left to guess at the ALJ's reasoning, which frustrates meaningful review." *Nicole L. v. Kijakazi*, No. 6:20-CV-01576 (NAM), 2022 WL 160274, at *8 (N.D.N.Y. Jan. 18, 2022). Further, it is not clear to the Court that interpreting Dr. Domanowski's June 16, 2020 as consistent with marked mental limitations—which Defendant effectively concedes is a possible reading (*see* Dkt. 6-1 at 15 n.1)—would have had no meaningful effect on the resolution of this case. The Court therefore cannot say with certainty that application of the proper legal standard would have inevitably led to the same outcome. *Cf. Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (explaining that "[r]emand is unnecessary . . . where application of the correct legal standard could lead to only one conclusion") (quotation and original alteration excluded).

For these reasons, the Court concludes that remand is in order "to allow the ALJ to explain the supportability and consistency factors with regard to the medi[c]al opinion evidence, and to further develop the record[.]" *Kaliegh O. o/b/o S.S.T.*, 2025 WL 2933177, at *5. Having reached this conclusion, the Court need not and does not reach Plaintiff's argument that the ALJ failed to adequately explain his rejection of particular limitations contained in MHC Fisk and NP Coggiola's opinion.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 5) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion for judgment on the

pleadings (Dkt. 6) is denied. The Clerk of Court is directed to enter judgment and close this case.

    SO ORDERED.

                                                                  _____
                                                                  COLLEEN D. HOLLAND
                                                                  United States Magistrate Judge

Dated:  Rochester, New York
           February 27, 2026